**SHAKED LAW GROUP, P.C.**
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
Email: ShakedLawGroup@gmail.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
PEDRO MARTINEZ,

Plaintiff,

Case No. 26-cv-7644

- against -

**COMPLAINT**

CARDS AND COFFEE LLC and CARDS & COFFEE INC.,

Defendants.
---------------------------------------------------------X

## INTRODUCTION

1. Plaintiff, Pedro Martinez ("Plaintiff" or "Martinez"), brings this action on behalf of himself against Cards and Coffee LLC and Cards & Coffee Inc. (hereinafter "Cards and Coffee" or "Defendants"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to

the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4. Plaintiff brings this civil rights action against Cards and Coffee for their failure to design, construct, maintain, and operate their website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons. Defendants are denying blind and visually-impaired persons throughout the United States with equal access to the goods and services Cards and Coffee provides to their non-disabled customers through www.TheCoffeeBreakers.com (hereinafter "TheCoffeeBreakers.com" or "the Website"). Defendants' denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. TheCoffeeBreakers.com provides to the public a wide array of the goods, services, price specials, employment opportunities and other programs offered by Cards and Coffee. Yet, TheCoffeeBreakers.com contains thousands of access barriers that make it difficult if not impossible for blind customers to use the website. In fact, the access barriers make it impossible for blind users to even complete a transaction on the website. Thus, Cards and Coffee excludes the blind from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind persons to fully and independently access a variety of services.

6. The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility. The lack of an accessible website means

that blind people are excluded from experiencing transacting with Defendants' website and from purchasing goods or services from Defendants' website.

7. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendants have chosen to rely on an exclusively visual interface. Cards and Coffee's sighted customers can independently browse, select, and buy online without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and purchasing on TheCoffeeBreakers.com.

8. By failing to make the website accessible to blind persons, Defendants are violating basic equal access requirements under both state and federal law.

9. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York State law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

10. Plaintiff browsed and intended to make an online purchase of the '2026 Topps Holiday Baseball Mega Box' and the '2025/26 Panini Select Road to FIFA World Cup Soccer Hobby Mega Box' on TheCoffeeBreakers.com. However, unless Defendants remedy the numerous access barriers on its website, Plaintiff will continue to be unable to independently navigate, browse, use, and complete a transaction on TheCoffeeBreakers.com.

11. Because Defendants' website, TheCoffeeBreakers.com, is not equally accessible to blind consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Cards and Coffee's policies, practices, and procedures so that Defendants' website will become and remain accessible to blind and visually-impaired consumers. This complaint also seeks compensatory damages to compensate Plaintiff for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq*., and 28 U.S.C. § 1332, because Plaintiff is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 133(d)(2).

14. Venue is proper in this District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendants conduct and continue to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

15. Defendants have been conducting business in New York State, including in this District. Defendants purposefully target and otherwise solicit business from New York State residents through its website and sells its products through many retailers in this District. Because of this targeting, it is not unusual for Cards and Coffee to conduct business with New York State residents. Defendants also have been and is committing the acts alleged herein in this District. has been and is violating the rights of consumers in this District, and has been and is causing injury to consumers in this District. A substantial part of the acts and omissions giving rise to Plaintiff's claims have occurred in this District. Most courts support the placement of venue in the district in

which Plaintiff tried and failed to access the Website. In *Access Now, Inc. v. Otter Products, LLC* 280 F.Supp.3d 287 (D. Mass. 2017), Judge Patti B. Saris ruled that "although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim. Therefore, venue is proper in [the District of Massachusetts]." *Otter Prods*., 280 F.Supp.3d at 294. This satisfies Due Process because the harm – the barred access to the website – occurred here." *Otter Prods*., 280 F.Supp.3d at 293. Additionally, in *Access Now, Inc. v. Sportswear, Inc*., No. 17-cv-11211-NMG, 2018 Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), Judge Nathaniel M. Gorton stated that the defendant "availed itself of the forum state's economic activities by targeting the residents of the Commonwealth . . . Such targeting evinces a voluntary attempt to appeal to the customer base in the forum." *Sportswear*, No. 1:17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 at *11. Thus, establishing a customer base in a particular district is sufficient cause for venue placement.

**PARTIES**

16. Plaintiff, is and has been at all relevant times a resident of Kings County, State of New York.

17. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff, Pedro Martinez, cannot use a computer without the assistance of screen reader software. Plaintiff has been denied the full enjoyment of the facilities, goods and services of TheCoffeeBreakers.com as a result of accessibility barriers on TheCoffeeBreakers.com.

18. Defendant, Cards and Coffee LLC, is a California foreign limited liability company doing business in New York State, with a principal place of business located in Los Angeles, California.

19. Defendant, Cards & Coffee Inc., is a California foreign business corporation doing business in New York State, with a principal place of business located in Los Angeles, California.

19. Cards and Coffee provides to the public a website known as TheCoffeeBreakers.com which provides consumers with access to an array of goods and services, including the ability to view the wide range of sports trading cards, sealed packs and boxes, and other collectible-related goods which can be purchased with the click of a mouse, and learn about promotions, among other features. Consumers across the United States use Defendants' website to purchase sports trading cards, sealed packs and boxes, and other collectible-related goods. Defendants' products are sold at many retailers throughout the country including retailers in this district. Defendants maintain dominion and control over how its products are sold at its partner retailers. Defendants also maintain a physical brick-and-mortar store which allows customers to browse and make purchases. Defendants' website serves as a nexus to its physical store location. Defendants' website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). *See Victor Andrews v. Blick Art Materials, LLC*, No. 17-cv-767, 2017 WL 3278898 (E.D.N.Y. August 1, 2017).

**NATURE OF THE CASE**

20. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

21. The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet. Unless

websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products and services contained therein.

22. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind user is unable to access the same content available to sighted users.

23. Blind users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchase and downloaded screen-reading software program available for blind computer users.

24. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.1 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that blind persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader. Websites need to be accessible to the "least sophisticated" user

of screen-reading software and need to be able to work with all browsers. Websites need to be continually updated and maintained to ensure that they remain fully accessible.

## FACTUAL ALLEGATIONS

25. Defendants control and operate TheCoffeeBreakers.com. in New York State and throughout the United States.

26. TheCoffeeBreakers.com is a commercial website that offers products and services for online sale. The online store allows the user to browse and view the wide selection of sports trading cards, sealed packs and boxes, and other collectible-related goods offered for sale, make purchases, and perform a variety of other functions.

27. Among the features offered by TheCoffeeBreakers.com are the following:

(a) Consumers may use the website to connect with Cards and Coffee on social media, using such sites as Facebook, Twitter, Instagram, and Pinterest;

(b) an online store, allowing customers to purchase sports trading cards, sealed packs and boxes, and other collectible-related goods for delivery to their doorstep; and

(c) learning about the products and the company, reading reviews, learning about shipping and return policies, and learning about promotions.

28. This case arises out of Cards and Coffee's policy and practice of denying the blind access to the goods and services offered by TheCoffeeBreakers.com. Due to Cards and Coffee's failure and refusal to remove access barriers to TheCoffeeBreakers.com, blind individuals have been and are being denied equal access to Cards and Coffee, as well as to the numerous goods, services and benefits offered to the public through TheCoffeeBreakers.com.

29. Cards and Coffee denies the blind access to goods, services and information made available through TheCoffeeBreakers.com by preventing them from freely navigating TheCoffeeBreakers.com.

30. TheCoffeeBreakers.com contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible drop-down menus, the lack of navigation links, the lack of adequate prompting and labeling, the denial of keyboard access, empty links that contain no text, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse.

31. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on TheCoffeeBreakers.com that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user). As a result, Plaintiff and blind TheCoffeeBreakers.com customers are unable to determine what is on the website, browse the website or investigate and/or make purchases.

32. TheCoffeeBreakers.com also lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms. On a shopping site such as TheCoffeeBreakers.com, these forms include search fields to find products, fields to select quantity, and fields used to fill-out personal information, including address and credit card information. Due to lack of adequate labeling, Plaintiff and blind customers cannot make purchases or inquiries as to Defendants' merchandise, nor can they enter their personal identification and financial information with confidence and security.

33. On TheCoffeeBreakers.com, Plaintiff is not able to complete a transaction. Specifically, when Plaintiff attempted to make a purchase using his screen readers, he encountered the following problems:

**NAVIGATION:**

A navigation submenu **AUTOMATICALLY** expands when the link comes into focus, **FORCING** users to navigate through it. Navigation links with submenus, such as "Memorabilia", "Graded Cards" and "Personal Boxes & Packs", open their submenus as soon as they receive keyboard focus, **WITHOUT** Plaintiff pressing Enter or Space. Focus then moves into the open submenu, and every submenu link must be navigated through before later header and navigation content can be reached. Moving past a menu **WITHOUT** working through all of its links was **NOT** possible. Consequently, Plaintiff was required to navigate through each and every subcategory, not knowing if and when the navigation will reach other sections of the homepage.

Navigation links with submenus and the "Site navigation" button do **NOT** announce their expanded or collapsed state. The same submenu links are announced **ONLY** as "Memorabilia link" and similar, with **NO** indication that they hold submenus or whether those submenus are open. On inner pages, the navigation collapses into a "Site navigation button" that does **NOT** announce its collapsed state, and activating it restores the navigation **WITHOUT** announcing "expanded" or giving any other confirmation. Plaintiff was **UNAWARE** that submenus existed, could **NOT** work out the structure of the navigation menu, and had **NO** indication of when the navigation was shown or hidden.

The "Search" feature is **NOT** accessible for screen readers. Typing into the website search field populates suggestions and results below it, but **NO** notification indicates that they have appeared, and **NONE** of the changes that follow as more text is entered is announced. **NO** instruction explains the suggestion feature or how to reach the suggested content. Suggestions went unnoticed, and Plaintiff had **NO** guidance for accessing them.

The "Cart" link/button is **NOT** announced as opening a pop-up, and the cart pop-up is **NOT** announced or given focus when displayed. The header cart control, announced as "cart link" or "1 cart link" once an item is added, opens a cart pop-up, but it is presented as a link with **NO** indication that a pop-up will open, which is **MISLEADING** because a link suggests a cart page. The pop-up appears silently, and focus stays in the header on the underlying page, entering the pop-up **ONLY** after navigating past the rest of the navigation menu. Even then, it carries **NO** label marking it as the cart. The cart pop-up went undiscovered, and Plaintiff could **NOT** reach it. This is a critical error.

There are **NO** functional controls to pause or stop moving content. The announcement region is a carousel that periodically changes its text, and its "pause slideshow" button receives focus but does **NOT** stop the slides when activated. The homepage banner is also a carousel whose active slide changes every few seconds, and **NO** pause or stop control is provided for it.

Keyboard focus **CANNOT** move forward past the Twitch video player on the homepage. The Twitch stream video player on the homepage is announced as a separate frame as expected, but once focus enters it, pressing Tab **NEVER** moves focus out of the frame and on to the rest of the page. Shift+Tab returns focus to the content above the player, but the homepage content below it and the footer **CANNOT** be reached with the keyboard from the homepage. Plaintiff was **PREVENTED** from reaching the end of the homepage and the footer links beneath it.

Product card/tile controls are **NOT** accessible on collection pages. The "Quick Shop" and "Add to cart" buttons on every product tile on collection pages appear **ONLY** when the tile is hovered with a mouse, and **NEITHER** receives keyboard focus; both are **SKIPPED** over entirely. Quick Shop opens a pop-up for viewing product details, making selections and adding to cart without leaving the page, and the Add to cart button offers a similar shortcut, but **NONE** of this is available from the keyboard. Plaintiff was **UNAWARE** the buttons existed and was **PREVENTED** from using either function.

Pagination links are **NOT** labeled meaningfully on collection pages. The pagination links at the bottom of collection pages are read **ONLY** as "2 link", "3 link" and so on, **WITHOUT** any label identifying them as page links or indicating that further pages of products are available. Whether the numbers referred to pages, or that more products existed beyond the current page, was **NOT** conveyed.

**SIZE, COLOR, SUBSCRIPTION, AND QUANTITY:**

Thumbnail image gallery controls are **NOT** labeled meaningfully on product pages. The thumbnail controls in the product page image gallery are each announced **IDENTICALLY** as "2026 Topps Holiday Baseball Mega Box graphic link", even though each shows a different product image, and the gallery itself is **NOT** identified as a gallery. **NOTHING** conveys that activating a thumbnail changes the main image displayed. Plaintiff had **NO** means of telling the thumbnails apart or determining what they were for.

Images of text **CANNOT** be read with the screen reader. The product page gallery images contain text, including an "Insert Card & Short Print Parallel Matrix" with detailed information about the cards included in the baseball card box, and **NO** text equivalent is provided. This information is available **ONLY** visually. Plaintiff had **NO** access to the details of the insert cards and parallels contained in the box.

Size options are **NOT** accessible. The size options on the "Card & Coffee Hoodie" product page are announced as "Small radio button checked 1 of 7" and similar, **WITHOUT** the visible "Size" label for the group. **NO** context identifies the radio buttons as size controls for the product, so the purpose of the group is conveyed **ONLY** visually. Plaintiff could **NOT** be certain what the options referred to.

There is **NO** verbal notification given when an option is sold out. The "Large" size option is greyed out with a strikethrough to show that it is sold out, but it receives focus as though it were in stock and is announced as "Large radio button checked 3 of 7", **WITHOUT** any indication that it is unavailable. When it is selected, the "Add to cart" button changes to "Sold Out", but that change is **NOT** announced either. Plaintiff was **MISLED** into treating the option as available and was given **NO** indication that it could **NOT** be purchased.

There is **NO** verbal notification given when quantity is adjusted on product pages. Activating the increase and decrease quantity buttons on product pages updates the quantity value visually, but the change is silent, and **NO** equivalent is provided to screen readers to confirm it or state the new value. Whether the quantity had changed, or what it now was, went unconfirmed.

**ADDING TO CART/NAVIGATING THE CART:**

There is **NO** verbal notification given when a product is added to the cart. Adding a product to the cart produces **NO** confirmation that the action succeeded or that the item was added. The **ONLY** visible change is the cart pop-up, which is itself **NOT** announced, as described below. Plaintiff had **NO** way of knowing whether the product had been added to the cart. This is a critical error.

When the cart pop-up is displayed, it is **NOT** announced. The cart pop-up that appears after a product is added gives **NO** indication of its presence, and **NO** announcement identifies it as a cart or a pop-up at any point. Plaintiff was **UNAWARE** that the cart pop-up was displayed after adding a product.

After a cart action, focus **RETURNS** unexpectedly to the top of the cart pop-up. Activating the increase or decrease quantity buttons in the cart pop-up moves keyboard focus back to the beginning of the pop-up **WITHOUT** any notification, instead of keeping it on or near the control that was used. Plaintiff lost their position each time and was **FORCED** to reorient and renavigate through the cart pop-up content, repeating this for every quantity adjustment.

There is **NO** verbal notification given when cart quantity is adjusted. Adjusting quantity in the cart pop-up updates both the item quantity and the cart total visually, but **NEITHER** change is announced, and **NO** other feedback is given. Plaintiff could **NOT** determine whether an adjustment had taken effect or what the new quantity and total

were.

Product names are **NOT** announced as users navigate through cart controls. The quantity controls in the cart pop-up are announced as "Quantity edit selected 1", "Reduce item quantity by one button" and "Increase item quantity by one button", **WITHOUT** the name of the product they belong to. When the cart holds more than one item, every set of controls is announced **IDENTICALLY**. Plaintiff could **NOT** tell which product a given control would change.

Consequently, Plaintiff was essentially prevented from completing a transaction on the Website.

34. Furthermore, TheCoffeeBreakers.com lacks accessible image maps. An image map is a function that combines multiple words and links into one single image. Visual details on this single image highlight different "hot spots" which, when clicked on, allow the user to jump to many different destinations within the website. For an image map to be accessible, it must contain alt-text for the various "hot spots." The image maps on TheCoffeeBreakers.com's menu page do not contain adequate alt-text and are therefore inaccessible to Plaintiff and the other blind individuals attempting to make a purchase. When Plaintiff tried to access the menu link in order to make a purchase, he was unable to access it completely.

35. Furthermore, Plaintiff is unable to locate the shopping cart because the shopping cart form does not specify the purpose of the cart. As a result, blind customers are denied access to the shopping cart. Consequently, Plaintiff was unsuccessful in adding products into his shopping cart and are essentially prevented from purchasing items on TheCoffeeBreakers.com.

36. Moreover, the lack of navigation links on Defendants' website makes attempting to navigate through TheCoffeeBreakers.com even more time consuming and confusing for Plaintiff and blind consumers.

37. TheCoffeeBreakers.com requires the use of a mouse to complete a transaction. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, TheCoffeeBreakers.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases on TheCoffeeBreakers.com.

38. Due to TheCoffeeBreakers.com's inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers. Some blind customers may require a driver to get to the stores or require assistance in navigating the stores. By contrast, if TheCoffeeBreakers.com was accessible, a blind person could independently investigate products and make purchases via the Internet as sighted individuals can and do. According to WCAG 2.1 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website. Plaintiff must tab through every navigation bar option and footer on Defendants' website in an attempt to reach the desired service. Thus, TheCoffeeBreakers.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently make purchases on TheCoffeeBreakers.com.

39. TheCoffeeBreakers.com thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use TheCoffeeBreakers.com and who would

otherwise be able to fully and equally enjoy the benefits and services of TheCoffeeBreakers.com in New York State and throughout the United States.

40. Plaintiff, Pedro Martinez, has made numerous attempts to complete a purchase on TheCoffeeBreakers.com, most recently on November 9, 2026; November 7, 2026; and November 17, 2026, but was unable to do so independently because of the many access barriers on Defendants' website. These access barriers have caused TheCoffeeBreakers.com to be inaccessible to, and not independently usable by, blind and visually-impaired persons. Amongst other access barriers experienced, Plaintiff was unable to make an online purchase of the '2026 Topps Holiday Baseball Mega Box' and the '2025/26 Panini Select Road to FIFA World Cup Soccer Hobby Mega Box' on Defendants' website. Moreover, if Defendants remove the access barriers that currently exist on the Website, Plaintiff will definitely visit the Website in the future to inquire about and purchase new and additional sports trading cards, sealed packs and boxes, and other collectible-related goods for delivery to his doorstep. Just because you're blind doesn't mean you can't have hobbies. Ever since he was a kid, Plaintiff has been a collector of limited items that he thinks will appreciate in value over time. He remembers the excitement of opening a pack of baseball cards and trading them with his friends before he lost his vision at the age of 13. Since then, Plaintiff has been keen on the value of sports cards, and memorabilia, which have gained significant popularity on the market because of the countless celebrities and influencers that have been open and vocal about the rare cards in their collections. Like most blind people, Plaintiff relies on social media for product recommendations. While browsing online, Plaintiff came across Defendants' platform. Plaintiff loved that Defendants' brand sells cards for almost every single sport that has cards available for sale, unlike most brands whose websites focus only on baseball and Pokémon. Having one platform that covers all of his collectible card needs saves Plaintiff the effort of finding and shopping at more than one

vendor, which is highly burdensome for him, as a blind person. Plaintiff also loved that Defendants' brand offers to coordinate with card grading service providers and consignment stores to help customers grade and sell their cards if they are valuable. This saves also Plaintiff the time and energy it would take for him to coordinate those aspects of the hobby himself. The fact that Defendants' brand makes Plaintiff's hobby so efficient was a significant benefit to him because even minor impediments can have significant impacts on Plaintiff's ability to enjoy collecting these items. As such, Plaintiff was eager to make a purchase on Defendants' website. Plaintiff sought to purchase directly from Defendants' website because doing so gives Plaintiff access Defendants' entire product lineup, exclusive discounts, bundles, and limited time offers that cannot be found elsewhere, and ensures product authenticity. Product authenticity is highly important for these kinds of goods, as counterfeit versions run rampant on the third-party market. Unfortunately, Defendants' website was not accessible and continues to be inaccessible, thereby deterring Plaintiff from making purchases on the site. If the website were accessible to the blind and if Plaintiff were not deterred from returning to the website, Plaintiff would revisit to complete the purchases he originally tried to make. Plaintiff also intends to participate in the hobby moving forward, so he would have to return to Defendants' website to buy additional card packs and boxes to get more chances to pull rare or valuable cards. Plaintiff would also like to return to Defendants' website to buy the cards, packs, and boxes Defendants will offer in the future, alongside Defendants' merchandise, as Defendants regularly update their website with new products. Plaintiff is particularly interested in returning to Defendants' website to purchase the 'Cards & Coffee Hoodie | Chocolate Brown | (Limited Edition).' Plaintiff has purchased similar products from other (accessible) vendors in the past, but Defendants' brand has a uniquely wide selection of packs and boxes from almost all sports, which Plaintiff is highly interested in and which sets Defendants apart from other vendors who specialize in one or two

card types. Unlike a brick-and-mortar facility, a website is instantly accessible at any moment, and, thus, an inability to make a purchase can only be attributed to access barriers (whereas for brick-and-mortar locations it can be attributed to proximity, travel time, etc.). *See Sanchez v. Nutco, Inc*., 10-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022) (citing *Quezada v U.S. Wings, Inc*., 20 Civ. 10707 (ER), 2021 U.S. Dist. LEXIS 234057, at *4 (S.D.N.Y. Dec. 7 2021)). Determining whether an ADA website accessibility complaint properly allege whether plaintiff lives in "close proximity" to a specific location makes no sense when goods can be browsed, bought, and delivered to Plaintiff's home through a website. Likewise, factual considerations of an intent to return regarding a physical location, such as how often the plaintiff walks by the location, or how often they enter the facility, are not applicable. *Cf. Lopez v. Arby Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS 43838. at *10 (S.D.N.Y. March 8, 2021). Plaintiff made numerous attempts to make purchases on the website during October and November 2026 without success and will definitely make purchases of additional and new products which are sold on the website and which currently cannot be purchased by blind persons.

41. As described above, Plaintiff has actual knowledge of the fact that Defendants' website, TheCoffeeBreakers.com, contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons.

42. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of TheCoffeeBreakers.com.

43. Defendants engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a) constructed and maintained a website that is inaccessible to Plaintiff with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to Plaintiff; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff.

44. Defendants utilize standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

45. Because of Defendants' denial of full and equal access to, and enjoyment of, the goods, benefits and services of TheCoffeeBreakers.com, Plaintiff suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of Defendants' conduct.

## FIRST CAUSE OF ACTION

(Violation of 42 U.S.C. §§ 12181 *et seq.* – Title III of the Americans with Disabilities Act)

46. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 45 of this Complaint as though set forth at length herein.

47. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

48. TheCoffeeBreakers.com is a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7).

49. Defendants are subject to Title III of the ADA because they own and operate TheCoffeeBreakers.com.

50. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

51. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

52. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

53. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

54. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been

followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendants' business nor result in an undue burden to Defendants.

55. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., and the regulations promulgated thereunder. Patrons of Cards and Coffee who are blind have been denied full and equal access to TheCoffeeBreakers.com, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

56. Defendants have failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

57. As such, Defendants discriminate, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of TheCoffeeBreakers.com in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq*. and/or its implementing regulations.

58. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

58. The actions of Defendants were and are in violation of the ADA, and therefore Plaintiff invokes his statutory right to injunctive relief to remedy the discrimination.

60. Plaintiff is also entitled to reasonable attorneys' fees and costs.

61. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**SECOND CAUSE OF ACTION**

(Declaratory Relief)

62. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 101 of this Complaint as though set forth at length herein.

63. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendants deny, that TheCoffeeBreakers.com contains access barriers denying blind customers the full and equal access to the goods, services and facilities of TheCoffeeBreakers.com, which Cards and Coffee owns, operates and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*. prohibiting discrimination against the blind.

64. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and against the Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendants from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*.;

b) A preliminary and permanent injunction requiring Defendants to take all the steps necessary to make its website, TheCoffeeBreakers.com, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that TheCoffeeBreakers.com is readily accessible to and usable by blind individuals;

c) A declaration that Defendants own, maintain and/or operate their website, TheCoffeeBreakers.com, in a manner which discriminates against the blind and which

fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*.;

d) An order directing Defendants to continually update and maintain its website to ensure that it remains fully accessible to and usable by the visually-impaired;

e) Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff for violations of their civil rights under the ADA;

f) Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

g) For pre- and post-judgment interest to the extent permitted by law; and

h) For such other and further relief which this court deems just and proper.

Dated: Scarsdale, New York
November 25, 2026

SHAKED LAW GROUP, P.C.
Attorneys for Plaintiff

By:*/s/Dan Shaked*__________
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
e-mail: ShakedLawGroup@Gmail.com